UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

PHYLLIS A. HENSLEY )
)
v. ) NO. 2:04-CV-97
)
COOPER STANDARD AUTOMOTIVE )

**MEMORANDUM OPINION**

The plaintiff in this case filed her complaint alleging violations of the Family Medical Leave Act ("FMLA"), and for retaliatory discharge under the laws of the State of Tennessee. This matter is before the Court to address the defendant's Motion for Summary Judgment. [Doc. 23]. The Court will adopt the majority of the facts asserted by the plaintiff in deciding this motion:

PLAINTIFF'S FACTS ADOPTED BY THE COURT

Ms. Hensley was employed with Cooper Standard Automotive ("Cooper") from March 29, 1999 until August 18, 2003. In July of 2003, Ms. Hensley underwent rotator cuff surgery in connection with a work place injury. Ms. Hensley's physician allowed her to return to work two weeks after the surgery but imposed physical restrictions on her activities. Her physician also prescribed

therapy which was scheduled several times a week.  In conjunction with her physical therapy, Ms. Hensley was also prescribed specific exercises to be performed throughout the day.  These exercises were very painful, and it would be impossible for Ms. Hensley to relax or sleep while she was completing them.  On the dates that she was scheduled to attend physical therapy, Ms. Hensley's supervisor required her to report to work at 5:30 a.m. rather than 7:00 a.m. to "make up" the time she needed to be absent from work.  Her supervisor informed her that, even though she was leaving early for physical therapy appointments in connection with workers' compensation, the company policy at Cooper was to still require her to make up her missed time.

  Making up the time she missed for physical therapy was very hard on Ms. Hensley.  She was recovering from surgery and still in extreme pain, doing painful physical therapy three times a week, and working full-time.  She would have preferred not to make up the time she missed for physical therapy, but she was not given a choice or informed that intermittent leave pursuant to the FMLA was available.

  Ms. Hensley discussed the exercises she was required to perform with her immediate supervisor and received permission to perform the exercises during work hours as necessary.  For two weeks following her return to work she did her

2

exercises at work without incident. Her practice in doing the exercises was the same each time she did them. She would advise her supervisor she was leaving and, after a restroom break, would enter the first aid room which contained a small cot on which she could lie down. The exercises had to be performed in a prone position. The first aid room in which Ms. Hensley performed her exercises was small and accessible to all employees. Ms. Hensley locked the door during the 15 to 20 minutes it took to do the exercises. The manner in which the exercises were performed was such that Ms. Hensley required privacy for the sake of modesty. She was unable to wear a bra at that time because of her shoulder injury, and her t-shirt would rise up and expose her stomach while she exercised. Ms. Hensley also turned off the bright overhead light in the room to allow her to do the exercises more comfortably. The single light in the room was directly above the cot Ms. Hensley laid on to perform her exercises, and would have shone directly in her eyes. Ms. Hensley's job required her to strain her eyes by inspecting small pieces of equipment, and as a result, her eyes are particularly sensitive to light. The light from underneath the door provided ample lighting for Ms. Hensley to perform her exercises.

       On August 15, 2003, Gabrielle Jenkins and Steve Wells entered the first aid room looking for cream for an insect bite. Ms. Hensley identified herself

3

Case 2:04-cv-00097 Document 55 Filed 08/17/05 Page 3 of 16 PageID #: 45

and let them know that she was doing her exercises. Neither Ms. Jenkins nor Mr. Wells spoke directly to Ms. Hensley. They left approximately 30 seconds later, and Ms. Hensley concluded her exercises and returned to her work station.

When Mr. Wells entered the room and saw Ms. Hensley laying on the cot, he concluded that she had been sleeping because the door was locked and the light was off. He was unaware that she had been performing her exercises in this room for two weeks He described Ms. Hensley as a good, dependable worker who got along well with others, and who did not have any disciplinary problems.

Ms. Jenkins concluded that Ms. Hensley was sleeping because she did not move for a few moments, she sat up slowly, and because she seemed groggy. However, Ms. Hensley contends she did not move because her exercises required her to lift her arm up and then lay it out straight for approximately 10-15 seconds until the muscle relaxed. She could not sit up quickly because, to avoid pain to her shoulder, she had to let her muscle relax for the required 10-15 seconds, then sit up slowly using only her right hand. Ms. Hensley also may have appeared groggy simply because she was startled by the bright light suddenly in her eyes, after they had grown accustomed to the dark. Both Mr. Wells and Ms. Jenkins said they had always known Ms. Hensley to be an honest person, and had no reason to question her word. Ms. Jenkins made no effort to question Ms. Hensley further

4

about her explanation or about the nature of the exercises she was performing.

Instead, Ms. Jenkins immediately went to Todd Morley and told him she had found Ms. Hensley sleeping in the first aid room. Mr. Morley then discussed the situation with Lisa Meadows, Human Resources Manager. Neither Mr. Morley nor Ms. Meadows spoke with Mr. Wells, and they did not ask him for a statement until after Ms. Hensley had been terminated. Further, Mr. Wells was never asked whether he was certain that Ms. Hensley was alseep, or why he thought she might have been. And, more importantly, Ms. Meadows did not even talk to Ms. Hensley about why she was in the first aid room or ask her if she had, in fact, been asleep. Ms. Meadows testified that she simply took Ms. Jenkins' word that Ms. Hensley had been sleeping.

Ms. Meadows further testified that Cooper had no policy in effect regarding investigations of employee misconduct. She also stated that, in a case where she received a sexual harassment complaint about an employee, she would never terminate that employee until she talked to him or her to get their side of the story.

On August 18, 2003, Ms. Hensley was summoned to the office of Ms. Lisa Meadows and was advised that her employment was being terminated for sleeping on the job. Although Ms. Meadows stated that the company had

5

investigated these allegations, no one discussed the issue of sleeping on the job with Ms. Hensley prior to her termination.

Cooper's Associate Handbook describes an employee's FMLA rights as follows:

> Cooper Standard Automotive provides family leave of absence without pay to eligible associates who wish to take time off from work duties to fulfill family obligations relating directly to childbirth, adoption, or placement of a foster child; or to care for a child, spouse, or parent with a serious health condition. A serious health condition means an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider.

The handbook does not contain any information about intermittent leave. Ms. Meadows also stated that if she was aware of an employee who had a qualifying event, she might talk to them about intermittent leave. Ms. Meadows revealed that she did not believe Ms. Hensley's physical therapy would qualify her for intermittent leave; therefore, she never discussed it with her.

**ADDITIONAL FACTS AND FINDINGS**

While performing her exercises at work, the plaintiff was not required to clock in or out. Although the plaintiff worked seven (7) hours instead of eight (8) hours on the days that she had physical therapy, she received her full

pay.

During her discovery deposition on October 25, 2004, the plaintiff testified as follows:

> Q. Okay. Can you– as we sit here today, you cannot give me a single name of somebody who was terminated–that your know was terminated after filing a Workers' Compensation claim?
>
> A. Not right off hand, no.
>
> Q. Well, I don't want you to do it offhand. I want you to take as much time as you need.
>
> A. If you sit here an hour, I still couldn't tell you anymore. I just said, I don't remember.
>
> Q. So if we sat here for an hour, you couldn't tell me the name of the person. . .
>
> A. I could not.

The record before the Court contains no proof as to how long the plaintiff would be required to go to physical therapy or to perform her exercises. There is also no proof in regard to how long she would remain under her doctor's care or be subject to restrictions. Likewise, there is no proof in the record that would show that the plaintiff had filed a worker's compensation claim at the time of her discharge.

## I.  FAMILY MEDICAL LEAVE ACT CLAIMS
   INTERMITTENT LEAVE

The plaintiff contends that the defendant violated the FMLA by failing to advise her that she was entitled to intermittent leave in connection with her physical therapy and her exercises.  She alleges that her termination for allegedly sleeping on the job during a time period, in which she was eligible for intermittent leave to do her exercises, violated the FMLA's prohibition against interfering with her exercise of rights under the Act.

A claim for interference under the FMLA is described by the Sixth Circuit in *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6TH Cir. 2005):

> Three kinds of leave are available to employees with a serious health condition: (1) one block of leave of twelve weeks or fewer; (2) intermittent leave, which means "leave taken in separate periods of time due to a single illness or injury ... and may include leave of periods from <u>an hour or more to several weeks</u>"; and (3) reduced leave schedule, a plan under which the employer reduces the employee's normal work hours, usually to a part-time basis. 29 *U.S.C.* §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800, 825.203(a). In order to receive leave, an employee is not required to invoke the FMLA expressly; however, she must give her employer notice of the request for leave, "stat[ing] a qualifying reason for the needed leave." 29 *C.F.R.* § 825.208(a)(2); see also *Id.* § 825.302(c). An employer may not interfere with, restrain, or deny an eligible employee's exercise of rights under the statute. 29 U.S.C. § 2615(a)(1). To prevail in a claim of interference under the FMLA, the employee must

8

prove, among other elements, that she was entitled to leave under the FMLA. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.2003).

The Court finds that the following provisions from the *Code of Federal Regulations* are applicable in this case:

1. § 825.114 What is a "serious health condition" entitling an employee to FMLA leave?

   (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

   (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

   (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

   (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., <u>physical therapist</u>) under orders of, or on referral by, a health care provider; . . . . . .

9

2. 29 *CFR* § 825.114(b) provides:

>   (b) Treatment for purposes of paragraph (a) of this section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations. Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, <u>exercise,</u> and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, <u>sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave</u>.   (emphasis added)

3. 29 *CFR* § 825.203 provides:

>   (c) Leave may be taken intermittently or on a reduced leave schedule when medically necessary for planned and/or unanticipated <u>medical treatment</u> of a related serious health condition <u>by or under the supervision of a health care provider</u>, or for recovery from treatment or rec overy from a serious health condition. It may also be taken to provide care or psychological comfort to an immediate family member with a serious health condition.

>   (1) Intermittent leave may be taken for a serious health condition which requires treatment by a health care provider periodically, rather than for one continuous

10

period of time, and may include leave of periods from an hour or more to several weeks. Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as for chemotherapy.

(d) There is no limit on the size of an increment of leave when an employee takes intermittent leave or leave on a reduced leave schedule. <u>However, an employer may limit leave increments to the shortest period of time that the employer's payroll system uses to account for absences or use of leave, provided it is one hour or less</u>. For example, an employee might take two hours off for a medical appointment, or might work a reduced day of four hours over a period of several weeks while recuperating from an illness. An employee may not be required to take more FMLA leave than necessary to address the circumstance that precipitated the need for the leave, except as provided in §§ 825.601 and 825.602. (emphasis added)

A. PHYSICAL THERAPY

In this case, it is undisputed that the plaintiff had a two week period of incapacity and that she had treatment three times a week by a provider of health care services, e.g., a physical therapist, under orders of a health care provider, Dr. Christopher. Therefore, she had a "serious health condition" which required continuing treatment by a health care provider, and she was protected by the FMLA.

There is a material dispute of fact in regard to whether or not the

11

plaintiff had prior notice that she could take intermittent leave in regard to her physical therapy. Therefore, the defendant is not entitled to summary judgment on the issue of whether the failure to notify the plaintiff that she was entitled to intermittent leave in regard to her physical therapy is a violation of the FMLA.

B. EXERCISES

In this case, the plaintiff asserts that as part of the requirements of her physical therapy, she was required to do 15 to 20 minutes of exercises each day. Although she complains that she was not told she could take intermittent leave for these exercises, she has failed to show that these exercises constitute "medical treatment. . . . by or under the supervision of a health care provider"; that her exercises lasted an hour or more; or the shortest period of time that the defendant's payroll system uses to account for absences or use of leave, provided it is one hour or less.

Therefore, the Court cannot find that 15 to 20 minutes of exercises would qualify the defendant for intermittent leave. In the absence of physical therapy, these exercises would not even be sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

In addition, an employee may not be required to take more FMLA

12

leave than necessary to address the circumstance that precipitated the need for the leave. The fact that the defendant permitted the plaintiff to do her exercises without clocking out or taking any leave without pay was more than fair.

Accordingly, the defendant is entitled to summary judgment on the issues of whether the failure to notify the plaintiff that she was entitled to intermittent leave in regard to her exercises violated the FMLA and whether her termination while she should have been on intermittent leave for her exercises was a violation of the FMLA.

**RETALIATION CLAIM**

The plaintiff claims that she was terminated for exercising her rights under the Tennessee workers' compensation laws. The elements of a cause of action for discharge in retaliation for asserting a workers' compensation claim are set out in *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558-559 (Tenn. 1993):

> [T]he following elements are found to establish a cause of action for discharge in retaliation for asserting a workers' compensation claim:
> (1) The plaintiff was an employee of the defendant at the time of the injury;
> (2) the plaintiff made a claim against the defendant for workers' compensation benefits;
> (3) the defendant terminated the plaintiff's employment; and

13

> (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment.
> The burden of proof rests, of course, upon the plaintiff to prove the elements of the cause of action, including a causal relationship between the claim for workers' compensation benefits and the termination of employment. Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury.

Once the employee has made a *prima facie* case of retaliation, the burden shifts to the employer to prove a legitimate nonpretextual nonretaliatory reason for the discharge which may involve the employee's own shortcomings, such as alleged in this case, that is, of sleeping on the job. *Id.* at 559.

The defendant contends that the plaintiff has offered no proof that which would show that the exercise of her protected rights under the Tennessee worker's compensation laws was causally related to her subsequent discharge. The plaintiff may meet this causation requirement by presenting direct evidence of a causal link, such as where the employer was acting pursuant to an established policy or where the employer admitted the reason for the termination, or by presenting compelling circumstantial evidence. *Thomason v. Better-Bilt Aluminum Prods., Inc.,* 831 S.W.2d 291, 293 (Tenn.App.1992).

In her amended complaint, the plaintiff has specifically alleged:

14

26. Defendant has a pattern and practice of terminating employees who have been injured on the job and who have received worker's compensation benefits through defendant's worker's compensation insurance.

27. Defendant's stated reason for terminating Ms. Hensley's employment , that she was sleeping on the job, is a pretext for the real reason Ms. Hensley was terminated, which was her exercise of her right to receive worker's compensation benefits.

The plaintiff's own testimony establishes that she has no evidence that the defendant has a pattern and practice of terminating employees that have been injured on the job. Plaintiff contends that evidence of a perceived "attitude" of her supervisor and her fellow employees against her because she had restrictions is sufficient circumstantial evidence to make out her *prima facie* case. However, a plaintiff's subjective beliefs and speculations about the reason for her discharge can not establish the necessary causal link. See *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677 (Tenn.Ct.App.1999).

The Court FINDS that the plaintiff has failed to establish a *prima facie* case for retaliatory discharge, in that she had not shown that her claim for workers' compensation benefits was a substantial factor in her employer's motivation to terminate her. Therefore, the defendant's motion for summary

judgment as to her retaliation claim will be granted.

An appropriate order shall issue.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

16